## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## CIVIL MINUTES—GENERAL

| Case No. | **EDCV 19-1241 (JGB) (SHKx)** | Date | September 3, 2019 |
|---|---|---|---|
| Title | ***Travis Baker v. Propak Logistics, Inc., et al.*** | | |

Present: The Honorable     JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

Proceedings:     **Order (1) DENYING Plaintiff Travin Baker's Motion to Remand (Dkt. No. 12); and (3) VACATING the September 9, 2019 Hearing (IN CHAMBERS)**

Before the Court is Plaintiff Travin Baker's Motion to Remand. ("Motion," Dkt. No. 12.) The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After consideration of the papers filed in support of, and in opposition to the Motion, the Court DENIES the Motion. The hearing scheduled for September 9, 2019 is VACATED.

## I.    BACKGROUND

On April 30, 2019, Plaintiff Travin Baker ("Plaintiff") filed this putative class action complaint against Defendants Propak Logistics, Inc. ("Defendant") and Does 1 through 100 (collectively, "Defendants") in the Superior Court for the County of San Bernardino. ("Complaint," Dkt. No. 1–4.) Plaintiff brings this action on behalf of himself and "[a]ll current and former hourly-paid employees who worked for any of the Defendants within the State of California at any time during the period from four years preceding the filing of this Complaint to final judgment." (Complaint ¶ 13.) The Complaint advances multiple claims under California law: (1) unpaid overtime; (2) unpaid meal period premiums; (3) unpaid rest period premiums; (4) unpaid minimum wages; (5) final wages not timely paid; (6) wages not timely paid during employment; (7) non-compliant wage statements; (8) failure to keep requisite payroll records; (9) unreimbursed business expenses; and (10) violation of the California Business and Professions Code, §§ 17200, et seq. (Complaint ¶¶ 47–117.)

Plaintiff asserts Defendant employed him as an hourly-paid, non-exempt employee from approximately December 2017 through May 2018. (Id. ¶¶ 17–18.) Plaintiff alleges that during the time of his employment, Defendant failed to compensate him and other similarly situated employees for all hours worked, missed meal periods, and/or rest breaks. (Id. ¶ 19.) Plaintiff claims Defendant is engaged in a pattern and practice of wage abuse against its hourly-paid or non-exempt employees in California. (Id. ¶ 25.) Plaintiff further alleges he and other putative class members were not provided complete and accurate wage statements, were not paid minimum wages for all hours worked, and were not paid all wages owed upon discharge or resignation from Defendant. (Id. ¶¶ 30–37.)

Defendant removed the action to this Court on July 3, 2019. ("Notice of Removal," Dkt. No. 1.) Defendant asserts jurisdiction under the Class Action Fairness Act ("CAFA"). Plaintiff then filed the Motion on August 2, 2019. (Dkt. No. 12.) Defendant opposed the Motion on August 19, 2019. ("Opposition," Dkt. No. 13.)[1] Plaintiff filed its reply memorandum on August 26, 2019. ("Reply," Dkt. No. 18.)

## II.   LEGAL STANDARD

"Federal courts are courts of limited jurisdiction, possessing only that power authorized by the Constitution and statute." Gunn v. Minton, 133 S. Ct. 1059, 1064 (2013). CAFA vests federal courts with original jurisdiction over class actions involving at least 100 class members, minimal diversity, and an amount in controversy that exceeds $5,000,000. 28 U.S.C. § 1332(d).

Generally, courts must "strictly construe the removal statute against removal jurisdiction." Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992). "However, 'no anti-removal presumption attends cases invoking CAFA . . . .'" Garcia v. Wal-Mart Stores, Inc., 2016 WL 6068104, at *3 (C.D. Cal. Oct. 14, 2016) (quoting Dart Cherokee Basin Operating Co., LLC v. Owens, 135 S. Ct. 547, 553 (2014)). Instead, Congress intended CAFA to be interpreted expansively. Ibarra v. Manheim Investments, Inc., 775 F. 3d 1193, 1197 (9th Cir. 2015).

A defendant seeking removal of an action to federal district court need only offer a "short and plain statement of the grounds for removal" in its notice of removal. 28 U.S.C § 1446(a). To meet CAFA's diversity requirement, a removing defendant must show "any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A). "Thus, under CAFA complete diversity is not required; 'minimal diversity' suffices." Serrano v. 180 Connect, Inc., 478 F.3d 1018,1021 (9th Cir. 2007) (citations omitted).

To satisfy CAFA's amount-in-controversy requirement, "a removing defendant must plausibly assert that the amount in controversy exceeds $5,000,000." Garcia 2016 WL 6068104, at *3 (citing Ibarra, 775 F. 3d at 1197). A removing "defendant's amount-in-controversy

---

[1] Defendant also filed a Request for Judicial Notice on August 19, 2019. ("RJN," Dkt. No. 14.) Plaintiff opposed the request. (Dkt. No. 19.) The Court does not rely on any of the documents included in the RJN in its decision, and therefore DENIES the RJN as moot.

allegation should be accepted when not contested by the plaintiff or questioned by the court." Dart Cherokee, 135 S. Ct. at 553. Where a plaintiff questions the amount in controversy asserted, further evidence establishing that the amount alleged meets the jurisdictional minimum is required. Id. at 554. "In such a case, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." Id. at 554.

"The parties may submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" Ibarra, 775 F.3d at 1197 (quoting Singer v. State Farm Mut. Auto. Ins. Co., 116 F.3d 373, 377 (9th Cir. 1997)). "Under this system, CAFA's requirements are to be tested by consideration of real evidence and the reality of what is at stake in the litigation, using reasonable assumptions underlying the defendant's theory of damages exposure." Id. at 1198.

## III. DISCUSSION

Plaintiff seeks remand: he asserts that Defendant's amount in controversy estimate of $10,699,528.75[2] is inaccurate and unreliable. (See Notice of Removal at 13; Motion at 2, 4.) Plaintiff argues that (1) Defendant provides no evidence to support the figures it uses in the calculation (e.g., number of employees affected, number of pay stubs at issue, average hourly rate of pay, etc.); (2) Defendant relies on unreasonable estimates of the rate of the violations (e.g., amount of unpaid overtime, number of missed meal breaks, etc.); and (3) Defendant improperly includes a 25% attorneys' fees award. (See generally, Motion.) Plaintiff proposes no alternative calculation, stating only that that the real number "falls well beneath the $5,000,000 threshold." (Motion at 2.)

### A. Figures Relied Upon in Defendant's Amount-in-Controversy Estimate

In the Notice of Removal, Defendant relies on several figures to calculate the amount in controversy: (a) number of putative class members, (b) average hourly rate of pay for putative class members, (c) number of wage statements issued to putative class members, (d) number of putative class members who have separated employment, and (e) number of workweeks worked by the putative class. (Notice of Removal ¶¶ 16, 20, 22b.[3]) Plaintiff complains that Defendant

---

[2] In its Opposition, Defendant cites a slightly higher number for the amount in controversy: $10,874,341. (Opposition at 22.) Defendant relied on an inaccurate figure in the Notice of Removal that resulted in an underestimate. (Opposition at 16.) The Court notes two different amounts in controversy. (Compare Opposition at 2 (citing $10,745,341) with Opposition at 22 (citing $10,874,341).) These small differences are immaterial to resolving the question of whether the CAFA threshold has been met.

[3] The Notice of Removal uses inconsistent paragraph numbering. There are two paragraphs labeled 21, and another two labeled 22. Several paragraphs are numbered out of order. For clarity purposes, the Court will refer to the paragraphs as Defendant has labeled them and use a "b" suffix when referring to the second paragraphs labeled 21 and 22.

fails to submit any evidence to support these numbers. (Motion at 5–8.) Along with the Opposition, Defendant submitted the Declaration of William Turner, Defendant's Senior Human Resources Information Systems Manager ("Turner Declaration," Dkt. No. 13-1.), which states the following:

- Between April 30, 2015 and July 2, 2019, Propak employed approximately 1,090 hourly non-exempt employees in the state of California, who worked approximately 27,445 work weeks at an average rate of pay of $12.91;

- Of these 1,090 hourly non-exempt employees, four (4) employees were part-time or less than full-time;

- Between April 30, 2018 and July 2, 2019, Propak employed 439 hourly non-exempt employees, to whom Propak issued 11,151 pay stubs between April 30, 2018 and July 2, 2019;

- Between April 30, 2016 and July 2, 2019, 776 hourly non-exempt employees in the state of California separated from employment.

(Turner Declaration ¶ 3.) Mr. Turner states that the information in the declaration is "based on [his] personal and first-hand knowledge or based on documents created and kept and practices conducted in the regular course of Propak's business." (Id. ¶ 2.)

Plaintiff objects to the reliability of the Turner Declaration and argues the evidence lacks foundation because the declaration "fails to indicate which specific databases and records he reviewed." (Reply at 5.) But the Turner Declaration plainly states that the information contained therein is based on Mr. Turner's review of Propak's "business records that list every employee's start date in a particular position, termination date (if applicable, location, rate of pay, and exempt or non-exempt classification." (Id. ¶ 3.) And Mr. Turner's title—Senior Human Resources Information Systems Manager—reveals that he has the expertise to understand these records. Because the Turner Declaration states with specificity the nature of the records Mr. Turner reviewed, it lays a sufficient foundation for the assertions made therein.

The Court OVERRULES Plaintiff's objections. The Court further finds that the evidence in the Turner Declaration is reliable and does not lack foundation. Defendant has established the above listed figures by a preponderance of the evidence.

## B. Assumptions Made in Defendant's Amount-in-Controversy Estimate

In calculating the amount in controversy, Defendant makes several assumptions regarding the rates of violations. (See, e.g., Notice of Removal ¶¶ 18, 20, 28, 23, 25.) Plaintiff argues that the Court should disregard these assumptions because Defendant fails to provide evidence to support them. (Motion at 8–18.) But a "removing defendant must inevitably rely on some assumptions to support removal; a removing defendant is not required to go so far as to prove

plaintiff's case for him by proving the actual rates of violation." Bryant v. NCR Corp., 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018). Moreover, it is Plaintiff, rather than Defendant, that would possess the best evidence of the rates of violations: presumably, Defendant does not keep records of how often it violates California labor laws. But Plaintiff knows how often he was made to miss breaks or work overtime without appropriate compensation. See Patel v. Nike Retail Servs., Inc., 58 F. Supp. 3d 1032, 1042 (N.D. Cal. 2014) ("[T]he knowledge in question—how often Plaintiff claims she was made to work overtime—is uniquely within Plaintiff's possession.") Because Plaintiff fails to provide any alternative assumptions or evidence to be used in the calculation of the amount in controversy, the Court will consider whether Defendant's assumptions reasonably arise from the allegations in Plaintiff's Complaint.

### 1. Number of Missed Meal and Rest Breaks

California employers must allow an uninterrupted thirty-minute meal break every five hours worked and a ten minute rest break every four hours worked. Cal. Labor Code §§ 226.7, 512(a). Plaintiff alleges that Defendant "intentionally and willfully required Plaintiff and the other class members to work during meal period and failed to compensate . . . the full meal period premium for work performed during meal periods" and "required Plaintiff and other class members to work four (4) or more hours without authorizing or permitting a ten (10) minute rest period." (Complaint ¶ ¶ 63, 71.) In calculating the amount in controversy associated with these allegations, Defendant assumes two meal break violations and two rest period break violations per employee per week. (Notice of Removal ¶ ¶ 23, 25.)

Plaintiff argues that this is assumption is unreasonable because although "[t]he complaint alleges a 'pattern and practice' of labor law violations" it does not allege that a violation occurred "every time the wage and hour violation could arise." (Motion at 14 (citing Ibarra, 775 F.3d at 1198–99.).) But Defendant does not assume there was a violation every time: there are five opportunities for meal break violations in a full-time work week, and Defendant assumes two violations actually occurred. (See Notice of Removal ¶ 23.) Similarly, Defendant assumes only two rest break violations when there are ten opportunities. (See Notice of Removal ¶ 25.) Plaintiff alleges a "pattern and practice" of labor violations and suggests that Defendant may have a "corporate policy and practice of failing to pay for . . . rest breaks." (Complaint ¶ 25, 16(b).) Though an allegation of "pattern and practice" of violations may not support the assumption that a violation occurred at every opportunity, it does imply that violations occurred routinely and frequently, and not occasionally or sporadically. Defendant's assumptions of a 40% meal break violation rate and 20% rest break violation rate are therefore reasonable. See Bryant, 284 F. Supp. 3d at 1151 (finding an assumption of a 60% violation rate reasonable where Plaintiff alleged that Defendant had a "policy and practice of meal and rest period violations"); Torrez v. Freedom Mortg., Corp., 2017 WL 2713400, at *4 (C.D. Cal. June 22, 2017) (finding an assumption of a 40% violation rate reasonable).

//
//
//

## 2. Number of Non-Compliant Wage Statements

California employers must provide employees with wage statements that accurately reflect total hours worked. Cal. Labor Code § 226(a). Employers may be assessed a per statement penalty for failure to comply with § 226(a). Plaintiff alleges that Defendant violated § 226(a) when it "intentionally and willfully failed to provide . . . complete and accurate wage statements." (Complaint ¶ 96.) In calculating the amount in controversy associated with these allegations, Defendant assumes that every wage statement issued to class members during the relevant period was inaccurate. (See Notice of Removal ¶ 18.)

Plaintiff complains that this is an unreasonable assumption because "nowhere in the operative Complaint does Plaintiff allege that every single wage statement . . . was deficient." (Motion at 9.) But the Complaint need not specifically state that every statement was deficient for that inference to reasonably arise from Plaintiff's allegations. As explained above, the Complaint's allegation that Defendant "engaged in a pattern and practice of wage abuse" implies frequent and routine violations. (See Complaint ¶ 25.) Moreover, if one assumes, as the Court does, that there were multiple unpaid meal and rest breaks per pay period, the assumption that every wage statement was inaccurate is inescapable. See supra, § III.B.1. Finally, the case law supports an assumption that all implicated wage statements are inaccurate where, as here, Plaintiff makes broad allegations of systematic violations. See, e.g., Torrez, 2017 WL 2713400, *4 (holding that an assumption of a 100% violation rate is reasonable in an amount-in-controversy calculation where Plaintiff made allegations that were "susceptible to broad interpretations"); Monteon v. M.A.C. Cosmetics, Inc., 2018 WL 3323877, at *3 (C.D. Cal. July 5, 2018) (holding that where Plaintiff alleged a systematic policy of labor violations, there was "sufficient evidence to infer that a violation occurred for each employee in every pay period").

## 3. Average Waiting Period Penalty

When an employee separates from a California employer, the employer must pay all unpaid and earned wages at the time of separation (unless the employee has quit and given less than seventy-two hours notice). Cal. Labor Code §§ 201, 202. If an employer fails to do so by the statutory deadline, it must pay a daily waiting time penalty until all outstanding wages are paid, up to thirty days. Cal. Labor Code § 203. Plaintiff alleges that Defendant "intentionally and willfully failed to pay Plaintiff and the other class members . . . their wages, earned and unpaid, within seventy-two (72) hours of their leaving Defendants' employ." (Complaint ¶ 84.) Defendant assumes the maximum thirty-day penalty for each separated class member in its amount-in-controversy calculation. (Notice of Removal ¶ 20.) And again, Plaintiff argues that this assumption is unreasonable. (Motion at 9–11.)

Plaintiff's broad waiting time allegations can be read to apply to every one of the class members who separated from Defendant. See Torrez, 2017 WL 2713400, *4 (holding that nearly identical allegations "impl[ied] that all putative class members who have separated from [Defendant] were not paid their full wages"). And the thirty-day maximum penalty will almost certainly apply to all separated class members as well: Plaintiff alleges multiple wage violations

that apply across the class and "waiting time penalties [] accrue based on unpaid overtime, unpaid minimum wage, and unpaid meal and rest break claims." See Mortley v. Express Pipe & Supply Co., 2018 WL 708115, at *5 (C.D. Cal. Feb. 5, 2018). As such, even if separated employees received their checks on the day they separated, if Plaintiff's allegations are true, there remain outstanding unpaid wages, and the full thirty-day penalty would apply for each.

### 4. Amount of Unpaid Overtime

California law requires employers to pay overtime compensation to employees that work either more than eight hours per day or forty hours per week. Cal. Labor Code §§ 510, 1198. Plaintiff alleges that putative class members were required to work overtime hours "without overtime compensation for all overtime hours worked." (Complaint ¶ 37.) In its calculation, Defendant assumes two hours of overtime per class member per week. (Notice of Removal ¶ 31.) This assumption is reasonable and finds support in the case law. See Torrez, 2017 WL 2713400, *4 (finding an assumption of three uncompensated overtime hours per week to be reasonable).

### 5. Amount of Unpaid Minimum Wage

Employers must pay employees no less than the California minimum wage. Cal. Labor Code §§ 1194, 1197, and 1197.1. Failure to do so results in the payment of a penalty to the employee along with the unpaid minimum wage balance plus interest. Cal. Labor Code § 1197.1. Plaintiff alleges that the putative class members "were not receiving at least minimum wages for all hours worked." (Complaint ¶¶ 30, 78.) In calculating the amount in controversy, Defendant assumes one minute of unpaid minimum wage per employee per week.[4] Assuming, as this Court does, that each putative class member experienced multiple wage violations per week, it is more than reasonable to assume one minute of unpaid minimum wage per week. See Torrez, 2017 WL 2713400, *4.

Based on the analysis above, the Court concludes that Defendant has established by a preponderance of the evidence the following amounts in controversy:

| Claim | Amount in Controversy |
|---|---|
| Unpaid Meal Period Premium | $708,630 |
| Unpaid Rest Period Premium | $708,630 |
| Non-Compliant Wage Statements | $1,093,150 |
| Final Wages Not Timely Paid | $2,404,368 |
| Unpaid Overtime | $1,062,945 |

[4] While one minute per week appears to be a negligible amount, because the per violation penalties ($100 for initial violation; $250 for subsequent violations) are much larger than the wages at issue (average of $12.91 per hour), the amount of unpaid time impacts the calculation less than the frequency of the violation. (See Turner Declaration ¶ 3.)

| Unpaid Minimum Wage | $2,721,900 |
|---|---|

These amounts total $8,699,623. As such, the Court need not address the attorneys' fees estimate to conclude that CAFA's amount-in-controversy requirement has been met. Accordingly, the Court DENIES the motion.

## IV.    CONCLUSION

For the reasons set forth above, the Motion to Remand by Plaintiff is DENIED and the hearing on September 9, 2019 is VACATED.

**IT IS SO ORDERED.**